UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

RNC CONSOLIDATED CASES (RJS) (JCF)

-------------------------------------------------------------------x

DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF THEIR OBJECTIONS TO THE ORDER OF
MAGISTRATE JUDGE JAMES C. FRANCIS IV GRANTING
<u>PLAINTIFFS' MOTIONS TO AMEND THEIR COMPLAINTS</u>

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorneys For Defendants*

James Mirro
Raju Sundaran
Special Federal Litigation
100 Church Street, Room 3-130
New York, New York 10007
212.788.8026 (ph)
212.788.9776 (fax)

FEBRUARY 25, 2008

## TABLE OF CONTENTS

Preliminary Statement ..................................................................... 1

Background ................................................................................... 1

Argument ..................................................................................... 4

The Court Should Reverse The Magistrate Judge's Order ......................... 4

Standard of Review ......................................................................... 4

I. The Order, Which Approved The Proposed Amendments Well Beyond
    The Deadlines Set Forth In The CMOs, After Undue Delay And After
    Numerous Prior Amendments Were Permitted, Is Clearly
    Erroneous And Contrary To Law .................................................... 5

A. The CMOs Set Deadlines For Amending The Complaints ..................... 6

B. Plaintiffs Have Had Ample Prior Opportunities To Amend And
    Their Delay In Seeking To Add New Claims Is Not Excusable .............. 8

II. The Order, Which Approved The Addition Of
     Commissioner David Cohen As A Defendant Although The
     Complaints Fail To Properly Plead Any Cause Of Action
     Against Him, Is Clearly Erroneous And Contrary To Law ................ 15

A. Plaintiffs Have Not Pled The Personal Involvement Of Cohen
    And Have Failed To Provide Any Legal Authority To Support
    The Claim Against Him ............................................................. 17

B. The Complaints Fail To Plead Sufficient Facts To State A Claim
    Or To Provide Adequate Notice To Defendants Of The Claim
    Against Cohen ....................................................................... 22

C. The NYPD's Policies Of "Arresting" And "Fingerprinting"
    Are Lawful ............................................................................ 26

III. The Order, Which Set Forth An Entirely Novel Theory Of
      Liability Against Cohen, Without Considering Cohen's Right
      To Qualified Immunity On Such A Theory, Is Clearly
      Erroneous And Contrary To Law .............................................. 29

A. Cohen Is Entitled To Qualified Immunity ...................................... 31

IV. The Order, Which Approved Insufficiently Pled
      And Legally Moot Claims Against Defendants, Is Clearly
      Erroneous And Contrary To Law .............................................. 33

Conclusion .................................................................................. 34

Appendix .................................................................................... 35

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in support of their objections to the order of Magistrate Judge James C. Francis IV dated January 23, 2008 (the "Order") pursuant to Rule 72 of the Federal Rules of Civil Procedure ("FRCP"). The Order granted in part and denied in part the motions of plaintiffs in 37 of the RNC Consolidated Cases to amend their complaints. The Order permitted those amendments although the plaintiffs had ample prior opportunities to amend their complaints (and they had in fact amended their complaints on several prior occasions), the plaintiffs unnecessarily delayed in proposing these amendments and the deadline for such amendments had long passed. In addition, the Order approved plaintiffs' claims against the NYPD's Deputy Commissioner For Intelligence David Cohen ("Cohen") although it is apparent from the face of the complaints that plaintiffs have failed to plead sufficient facts to support any cause of action against him. Even if a legally cognizable claim has been stated against Cohen, it is an entirely novel claim and, for this reason, Cohen would be entitled to qualified immunity with respect to that claim, making the proposed amendments futile for this additional reason. Finally, the Order approved constitutional challenges to the "parading without a permit" and "disorderly conduct" statutes although those claims too are futile for the reasons set forth below. Accordingly, defendants respectfully submit that the Magistrate Judge's decision is clearly erroneous and contrary to law, and respectfully request that the Court reverse the Magistrate Judge's Order insofar as he permitted the amendments to which defendants objected.

## BACKGROUND

These actions arise from arrests around the time of the Republican National Convention in New York City in late August and early September 2004. From 2004 through

2007, plaintiffs filed over 100 separate actions against defendants including the City of New York alleging that defendants falsely arrested plaintiffs and committed miscellaneous other violations of their civil rights. With very few exceptions, the original complaints in these actions were filed in 2004 and 2005. See Order at 2. Over the past 3-1/2 years, plaintiffs have had ample opportunity to amend their complaints in these actions. Indeed, in many of these actions, plaintiffs have amended their complaints repeatedly as discovery progressed. According to the Magistrate Judge, "[s]ome of them have been amended before; thus, the proposed amended complaints in the pending motions may be the first, second, third, or fourth amended complaints." Order at 2 (emphasis added).

Beginning with the MacNamara case, the parties entered into a stipulated case management order ("CMO") in each of these cases. The original CMO in MacNamara, which was signed by Judge Karas on May 16, 2005, set a deadline of July 1, 2005 by which any amendments to the complaint shall have been served absent leave of court (Exhibit "A").[1] In an endorsed order dated July 19, 2005 and in an amended CMO, that deadline was extended to July 15, 2005 (Exhibit "B"). In addition, during a conference on April 21, 2005, Judge Karas directed that the scheduling order entered in each of the remaining RNC cases shall be modeled on the MacNamara CMO (see Discovery Order #1 at ¶¶ 15-16, Exhibit "C"). At this juncture, fact discovery is at a very late stage in all of these cases – and may be closed.[2]

---

[1] All Exhibits are attached to the Declaration of Raju Sundaran.

[2] At the last status conference before the Magistrate Judge, on February 15, 2008, he asked pointedly whether fact discovery was not already closed in all of these cases. "The Court: I mean, we had case management orders in all of these cases, and I think we've reached the point where fact discovery is closed." This colloquy arose in response to defendants' request to take the depositions of non-parties who plaintiffs intend to call at trial or use in support of summary judgment. The Magistrate Judge requested that plaintiffs address the issue of whether discovery is closed in their brief opposing defendants' request. That briefing has not yet occurred.

Nevertheless, on or about August 31, 2007 – after three years of consolidated discovery and on the eve of expiry of the federal statute of limitations -- plaintiffs filed a flurry of additional motions to amend their complaints. In an opposition memorandum filed on October 23, 2007 ("Defendants' Opposition Brief," Exhibit "D"), defendants opposed those proposed amendments. Although defendants could have opposed the proposed amendments in their entirety on the grounds of undue delay and prejudice, defendants elected to assert limited objections. Those objections focused on the proposed amendments that defendants believed were most oppressive, or were most obviously futile, for the reasons stated in that Brief. As to those amendments, defendants generally objected on grounds of undue delay, futility and prejudice to defendants. See Defendants' Opposition Brief at 1-4 ("Just a few months prior to the close of discovery, plaintiffs belatedly move for leave to file amended complaints . . ."). In addition, defendants specifically objected to the proposed amendments relating to Cohen (and others), chiefly on grounds of futility. See, e.g., Defendants' Opposition Brief at 7-13.[3] For their part, plaintiffs have not explained why each of the amendments they now seek could not have been made much earlier in this litigation -- if not at its outset. In addition, in defense of their proposed amendments relating to Cohen, plaintiffs make allegations that are neither pled in the proposed amendments themselves nor could be pled consistent with Rule 11 of the Federal Rules.

---

[3] The cases in which plaintiffs seek to amend their complaints are identified in footnote 1 of Defendants' Opposition Brief. The proposed claims to which defendants objected, and the specific complaints asserting those proposed claims, also are identified in each section of Defendants' Opposition Brief. They include all new state law claims by any new plaintiff and against any new defendant (Point I); all claims asserted against David Cohen (Point II); all claims challenging the "parading without a permit" and "disorderly conduct" statutes on their face and as applied (Point III); certain claims asserted by plaintiffs' counsel Jeffrey Rothman (Point IV); and all of plaintiffs' claims based upon a violation of their right to a fair trial (Point V). For the Court's convenience, all of the complaints that are affected by this appeal are identified in the Declaration of Raju Sundaran and are attached as Exhibit "F."

On January 23, 2008, the Magistrate Judge granted the plaintiffs' motions to amend substantially in their entirety including the proposed claims against Cohen (Exhibit "E") while acknowledging the "late stage in discovery" at which these amendments were sought. Order at 5. The effect of the Magistrate Judge's Order, which comes long after the pleadings should have been closed, is to add another layer of complexity to these numerous RNC cases at a point when fact discovery is at a very late stage – and may be closed.

## ARGUMENT

### THE COURT SHOULD REVERSE THE MAGISTRATE JUDGE'S ORDER

#### Standard Of Review

Rule 72 of the FRCP provides the standard of review applicable to decisions by the Magistrate Judge. The Rule provides that, as to *non-dispositive* matters, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Rule 72(a). As to *dispositive* matters, "[t]he district judge [shall] make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made[.]" Rule 72(b); see also Federal Magistrates Act, 28 U.S.C. §§ 636(b)(1). The standard of review applicable to orders on motions to amend, however, appears to be unsettled. See Lyondell-Citgo Refining v. Petroleos de Venezuela, et al., 2005 U.S. Dist. LEXIS 6533, *5-6 (S.D.N.Y. 2005) (Motley, J.). In any event, the Court should reverse the Order insofar as it permits new claims against defendants to which the defendants objected because it is clearly erroneous and contrary to law.

4

## I.

### The Order, Which Approved The Proposed Amendments Well Beyond The Deadlines Set Forth In The CMOs, After Undue Delay And After Numerous Prior Amendments Were Permitted, Is Clearly Erroneous And Contrary To Law[4]

"[A] court has discretion to deny leave to amend where the motion is made 'after inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." State Farm Insurance Co. v. Kop-Coat, Inc., 183 Fed Appx. 36, 37-38 (2nd Cir. 2006). "While delay alone, unaccompanied by an additional 'declared reason' such as prejudice to the opposing party, usually does not warrant denial of leave to amend . . . the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Id. at 38. Thus, in State Farm, the Second Circuit affirmed the denial of leave to amend where the motion was submitted four years after commencement of the action and, throughout that period, plaintiffs "had numerous opportunities to amend their complaint." Id. See also Lyondell-Citgo Refining v. Petroleos de Venezuela, et al., 2005 U.S. Dist. LEXIS 6533, *11 (S.D.N.Y. 2005) (Motley, J.) (denying amendment and recognizing that "district courts may deny leave to amend in the face of undue delay, bad faith, dilatory motive, undue prejudice, repeated failure to cure deficiencies by amendments previously allowed, or futility of the amendment").

---

[4] Rather than repeat the arguments verbatim, defendants hereby incorporate all of the points and authorities they made in their Opposition Brief to Magistrate Francis. In addition, defendants highlight the following points, which reflect only the most serious errors in the January 23 Order.

## A. The CMOs Set Deadlines For Amending The Complaints

As set forth in the Background section above, the MacNamara CMOs provided an explicit deadline for the amendment of the complaint. That deadline – July 15, 2005 -- expired long before the Magistrate Judge granted the plaintiffs' motions to amend. Under such circumstances, before granting the plaintiffs' out-of-time amendments, the Magistrate Judge should have considered the deadlines imposed by the CMOs. In addition, before granting the plaintiffs' out-of-time amendments, the Magistrate Judge should have considered the provisions of Rule 16 of the FRCP. "Where, as here, a pre-trial scheduling order establishing the time table for amendments to pleadings has been filed, the issue of whether a litigant should be granted leave to amend is initially governed by Rule 16(b)." Covington v. Police Officer Thomas Kid, et al., 1999 U.S. Dist. LEXIS 64, *7 (S.D.N.Y. 1999) (Pauley, J.).[5] Under Rule 16(b), "[a] scheduling order should not be modified 'except upon a showing of good cause.'" Id. See also MacNamara CMOs at 2 (expressly providing that they shall not be modified except upon a showing of good cause). "'Good cause' means that the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension." Id.

The Advisory Committee Notes to the 1983 Amendments to Rule 16 emphasize the importance of these provisions to the expeditious resolution of cases on a court's docket. "Rule 16(b) assures that the judge will take some early control over the litigation[.]" Notes to 1983 Amendment, Subdivision (b). "Item (1) assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and

---

[5] Rule 16(b) provides that the Court "shall . . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings" and that schedule "shall not be modified except upon a showing of good cause[.]" Rule 16(b). According to the Advisory Committee Notes to the 1983 Amendment to this Rule, "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Notes to 1983 Amendment, Subdivision (b) (emphasis added).

the pleadings amended." Id. (emphasis added). "[T]he fixing of time limits serves 'to stimulate litigants to narrow the areas of inquiry and advocacy to those they believe are truly relevant and material. Time limits not only compress the amount of time for litigation, they should also reduce the amount of resources invested in litigation. Litigants are forced to establish discovery priorities and thus to do the most important work first.'" Id.

"If 'good cause' is shown [for a modification of the CMO to permit an out-of-time amendment], then the moving party must demonstrate that the amendment is proper under Rule 15(a)." Covington, 1999 U.S. Dist. LEXIS 64 at *7-8. A court may deny an amendment pursuant to Rule 15(a) "in the face of undue delay, bad faith, dilatory motive, undue prejudice, repeated failure to cure deficiencies by amendments previously allowed, or futility of the amendment." Lyondell-Citgo Refining v. Petroleos de Venezuela, et al., 2005 U.S. Dist. LEXIS 6533, *11 (S.D.N.Y. 2005) (Motley, J.) (denying proposed amendment); Dais v. Lane Bryant, Inc., 2000 U.S. Dist. LEXIS 1228, *5 (S.D.N.Y. 2000) (Leisure, J.) (denying amendment); Covington v. Police Officer Thomas Kid, et al., 1999 U.S. Dist. LEXIS 64, *7 (S.D.N.Y. 1999) (Pauley, J.) (denying amendment); see generally Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227 (1962) (reciting "undue delay" among other factors sufficient to deny amendment). Where the plaintiff has failed to show good cause for modifying the CMO, however, then the Court "need not determine whether the amendment was proper under Rule 15(a)." Covington, 1999 U.S. Dist. LEXIS 64 at n.1.

Thus, in Covington, Judge Pauley held that "[b]ecause plaintiff has not offered a justifiable excuse for his failure to comply with the [deadline], 'good cause' has not been shown." Id. (denying the proposed amendment). See also Lyondell-Citgo Refining v. Petroleos de Venezuela, et al., 2005 U.S. Dist. LEXIS 6533, *13 (S.D.N.Y. 2005) (Motley, J.) (denying

proposed amendment where it came long after the deadline set in the CMO for such amendments and the party knew or should have known the facts necessary to seek amendment within the deadline); Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corporation, 2005 U.S. Dist. LEXIS 1893, *3, *10 (S.D.N.Y. 2005) (Leisure, J.) (denying proposed amendment where it was sought after the deadline set in the CMO for "amendments of pleadings as of right" and "five weeks prior to the discovery deadline").

Here, the Magistrate Judge failed to consider Rule 16, the deadlines set forth in the CMOs, and the good cause standard, which plaintiffs cannot satisfy in any event. As a result, the Order is clearly erroneous and contrary to law.

### B. Plaintiffs Have Had Ample Prior Opportunities To Amend And Their Delay In Seeking To Add New Claims Is Not Excusable

Even in cases where the Court has not entered an explicit deadline by which the parties shall amend their complaints, the proposed amendments should be denied where plaintiffs have unnecessarily delayed, have had ample prior opportunities to amend or where defendants would be prejudiced. See State Farm Insurance Co. v. Kop-Coat, Inc., 183 Fed Appx. 36, 37-38 (2nd Cir. 2006) (affirming denial of amendment on each ground); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 U.S. Dist. LEXIS 989, *8 (S.D.N.Y. 2004) (Motley, J.) (denying amendment and holding that "the theory for relief against the proposed defendants that plaintiffs advocate for was known to them at the time they filed their initial and first amended complaints"); Ruotolo v. City of New York, 2006 U.S. Dist. LEXIS 57346, *6-7 (S.D.N.Y. 2006) (Stein, J.) (denying amendment and holding that "[a] court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay"), aff'd, 2008 U.S. App. LEXIS 2551 (2d Cir. 2008); PKFinans International Corporation

v. IBJ Schroder Leasing Corporation, 1996 U.S. Dist. LEXIS 2177, *5 (S.D.N.Y. 1996) (Scheindlin, J.) (denying amendment and holding that "the burden of providing a satisfactory explanation for the delay is on the party who wishes to amend"); O'Sullivan v. The New York Times Co., 1997 U.S. Dist. LEXIS 19419, * (S.D.N.Y. 1997) (Preska, J.) (denying amendment and holding that "[a]lthough plaintiffs' counsel was aware of the potential [claim], counsel waited nearly seven months . . . to raise the issue of amendment").

In Ruotolo, Judge Stein held that "[i]nsofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable." Id. at *6. Thus, in Ruotolo, the Court denied the amendment proposed because it was "based on facts available to [plaintiff] from the beginning of this litigation." Id. at 8. "Nevertheless, Ruotolo made no effort to include these facts or that theory of relief in his pleadings throughout the lengthy course of this action, despite having previously moved to amend the complaint." Id. Similarly, in Dais v. Lane Bryant, Inc., 2000 U.S. Dist. LEXIS 1228, *5 (S.D.N.Y. 2000), Judge Leisure denied the proposed amendment where "plaintiff has offered no explanation as to why he chose to wait so long to attempt to add [claims]." Id. As is true of all of the newly proposed claims here, Judge Leisure recognized that "plaintiff has known the factual basis for his proposed amendment since commencement of the litigation, yet never sought to plead such claims until just prior to the close of discovery." Id. at *5-6, 8. "[I]f, as here, the plaintiff offers no excuse for the delay, denial of leave to amend is appropriate." Id.

Here, there can be no doubt that that plaintiffs had all of the information they needed at the very beginning of this litigation to assert the claims that they now belatedly seek to add. One searches the proposed amendments in vain for any claim that the plaintiffs could not have asserted at the very beginning of this litigation. By way of example, plaintiffs seek to add

claims to challenge the constitutionality of the "parading without a permit" statute as well as the "disorderly conduct" statute both on their face and "as applied." See, e.g., MacNamara Second Amended Complaint, Sixth and Seventh Counts; Defendants' Opposition Brief at 13-20 (identifying cases that seek to add these claims at notes 19-20); Order at 13-21. Plaintiffs claim that the statutes are "vague" and that they were selectively applied to plaintiffs. But plaintiffs were (or should have been) aware of these publicly available statutes, their language, and that all (or virtually all) of the plaintiffs had been charged pursuant to these statutes at the time that they commenced these actions.

Similarly, many plaintiffs now seek to bring claims based upon an alleged denial of their right to a fair trial (see, e.g., Bunim Fourth Amended Complaint Tenth Count; Defendants' Opposition Brief at 24-25 (identifying cases that seek to add these claims); Order at 25-28). They provide no explanation why these claims could not have been brought earlier. Others now seek to add a claim for "supervisory liability" as against numerous new defendants (see, e.g., MacNamara Second Amended Complaint, Eighth Count; Grosso Third Amended Complaint, Fifteenth Count, Adams Third Amended Complaint, Seventh Count). To support these Counts, plaintiffs recite essentially the same wrongs that they first raised in their earlier complaints -- except that they now seek to make the "supervisors" responsible as well. Some plaintiffs seek to bring additional state constitutional claims. See Order at 24-25. Other plaintiffs add a wide array of new claims in their complaints (see, e.g., Tikkun First Amended Complaint, adding Counts 6, 8-12, 14-16).

Many of the plaintiffs also now seek to press claims against Cohen. See Order at 7-13. Cohen is a high-level executive officer within the NYPD. He is well known to plaintiffs' counsel. In the RNC cases, he was disclosed to plaintiffs' counsel in deposition testimony and

other discovery at various points early in discovery and certainly no later than December 12, 2006 when he was formally identified by defendants as a witness. Plaintiffs noticed his deposition in these actions on February 13, 2007 and he gave a deposition on March 28, 2007. There could not have been any doubt about his role in the planning for the RNC for months, if not years, before that time. Nevertheless, plaintiffs elected not to amend their complaints to add him until August 2007.

If plaintiffs were interested in pressing these claims, plaintiffs could have, and should have, brought these claims in their original complaints or, at the very least, much earlier in this litigation. The same is true of all of the miscellaneous claims that plaintiffs in the RNC actions now belatedly seek to press. Nevertheless, plaintiffs – who are not proceeding *pro se* or *in forma pauperis* -- elected <u>not</u> to press these claims for three years.[6] The Magistrate Judge acknowledged the "late stage in discovery" at which these amendments are sought. Order at 5. The fact that many plaintiffs have amended their complaints *multiple times* over the past three years – but that they have elected not to make the amendments that they now seek -- also militates strongly in favor of denial of their amendments. <u>See, e.g.</u>, <u>State Farm Insurance Co. v. Kop-Coat, Inc.</u>, 183 Fed Appx. 38 (2nd Cir. 2006) (affirming denial of leave to amend where plaintiffs "had numerous opportunities to amend their complaint"); <u>Cartier, Inc. v. Four Star Jewelry Creations, Inc.</u>, 2004 U.S. Dist. LEXIS 989, *8 (S.D.N.Y. 2004) (Motley, J.) (denying amendment and holding that "the theory for relief against the proposed defendants that plaintiffs advocate for was known to them at the time they filed their initial and first amended complaints").

---

[6] None of the plaintiffs in the RNC actions currently pending are proceeding *pro se* or *in forma pauperis*, with the exception that the plaintiff in <u>Carranza</u> is proceeding *pro se*.

According to the Second Circuit, moreover, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Associates, 988 F.2d 344, 350 (2nd Cir. 1993); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 U.S. Dist. LEXIS 989, *6-12 (S.D.N.Y. 2004) (Motley, J.) (denying amendment); Dais v. Lane Bryant, Inc., 2000 U.S. Dist. LEXIS 1228, *9 (S.D.N.Y. 2000) (Leisure, J.) (denying amendment). If these amendments are permitted, the prejudice to the defendants will easily surpass this reduced threshold. This application addresses not one ordinary case but some 37 complaints that plaintiffs seek to amend in this complex litigation. For each of the numerous parties and claims that plaintiffs propose to add to these 37 cases, substantial additional investigation and discovery will be required. This comes at a time when fact discovery is at a very late stage in these cases – and may be closed. Defendants emphasize that the Magistrate Judge already has expressed that he is not inclined to grant any additional time for fact discovery, notwithstanding these new amendments.

Aside from discovery, these additional parties and claims will serve to complicate the cases and the defendants' preparations for trial (as we have already seen in the impact of the "as applied" claims upon the MacNamara class certification briefing). For instance, each of the new parties and claims will require considerable additional effort by defendants at the dispositive motion stage and at the trial stage. All of this adds to the already very considerable burden on both the defendants and the Court. See, e.g., Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 U.S. Dist. LEXIS 989, *8 (S.D.N.Y. 2004) (Motley, J.) (recognizing prejudice where "adding the proposed defendants represents a significant broadening of theories under which plaintiffs seek to recover"); Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corporation, 2005 U.S. Dist. LEXIS 1893, *12-13 (S.D.N.Y. 2005) (Leisure, J.) (recognizing

prejudice in the addition of multiple new claims late in the discovery period due to the need for additional motion practice and discovery); PKFinans International Corporation v. IBJ Schroder Leasing Corporation, 1996 U.S. Dist. LEXIS 2177, *7 (S.D.N.Y. 1996) (Scheindlin, J.) ("[u]ndue prejudice results when a proposed complaint dramatically changes the nature of the allegations and the extent of a defendant's liability"); Morillo v. City of New York, 2003 WL 22319609, *3 (S.D.N.Y. 2003) (Cote, J.) (recognizing prejudice to defendants in the need for additional motion practice and discovery); Dais v. Lane Bryant, Inc., 2000 U.S. Dist. LEXIS 1228, *9 (S.D.N.Y. 2000) (Leisure, J.) (denying amendment on grounds of delay and prejudice). As some courts have said, at some point the plaintiffs must commit to their theory of the case.

The Court also should consider the impact of these numerous amendments, sought simultaneously at the eleventh-hour in some 37 separate RNC cases, on the Court's own docket and on its institutional interests in finally resolving these cases. "In determining the impact of granting leave on judicial economy, a court should consider how the amendment would affect the use of judicial resources and the impact on the judicial system." In re Agent Orange Product Liability Litigation, et al., v. Dow Chemical Company, 220 F.R.D. 22, 25 (E.D.N.Y. 2004) (Weinstein, J.) (denying amendment and holding that "[p]arties will not be permitted to abuse the liberal amendment policy based upon the 'belief that [leave must be granted] in all cases, under all conditions even when they have been dilatory and substantial prejudice has resulted'"), quoting 3 Moore's Federal Practice § 15.15[1]. "The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party." 220 F.R.D. at 25 (emphasis added). "[T]he court should consider . . . whether the amendments would lead to expeditious disposition of the merits of the litigation." Id. Judge Weinstein denied the amendment proposed "because of the large additional expenditures of time

and effort that would be required by the court and parties." Id.  See also Johnson v. United States, 2006 U.S. Dist. LEXIS 37601, *3 (S.D.N.Y. 2006) (Karas, J.) ("district courts may dismiss a frivolous complaint *sua sponte*"); Jones v. The City of New York, et al., 2000 U.S. Dist. LEXIS 5159, *6 (E.D.N.Y. 2000) (Trager, J.) ("a district court has inherent authority to dismiss frivolous actions and has the authority under [Rule 12(b)(6)] to dismiss a complaint *sua sponte* if it 'lacks an arguable basis either in law or in fact'" [which] "spares prospective defendants the inconvenience and expense of answering such complaints" (omitting cites)); Hernandez v. United States, 1997 U.S. Dist. LEXIS 14256, *4-5 (S.D.N.Y. 1997) (Sweet, J.) (dismissing complaint *sua sponte* under Rule 8, holding that "the not insubstantial burden on judicial resources by such poorly articulated and frivolous claims may detract from the proper attention other meritorious claims deserve").

In these cases, the overall effect of the proposed amendments is to add to the already very significant burdens on the defendants and to delay further the final resolution of plaintiffs' claims to the prejudice of the defendants and to the detriment of the Court's docket. Whether the plaintiffs intentionally and collectively sat on these proposed amendments for "tactical" reasons until the final hour, with these anticipated amendments in mind as they pursued their own virtually limitless discovery plan, defendants may never know.  What is clear is that plaintiffs have offered no legitimate excuse for this seriously prejudicial delay in seeking to add new claims and scores of new defendants to these actions.  Accordingly, those portions of the plaintiffs' complaints to which defendants objected -- at a minimum -- should have been denied.  Defendants respectfully submit that the failure of the Magistrate Judge to consider the

requisite legal standards and the applicable facts as set forth above renders the Order clearly erroneous and contrary to law.[7]

## II.

### The Order, Which Approved The Addition Of Commissioner David Cohen As A Defendant Although The Complaints Fail To Properly Plead Any Cause Of Action Against Him, Is Clearly Erroneous And Contrary To Law

For all of the reasons discussed more fully in the following pages, and summarized for the Court's convenience in the bullet points below, plaintiffs' proposed pleadings against Cohen are defective as a matter of law.

- The proposed amended pleadings do not contain any facts supporting essential elements of a Section 1983 claim, including facts relating to Cohen's personal involvement, and do not contain facts supporting the specific claim that the Magistrate Judge approved against Cohen.

- The claim approved by the Magistrate Judge against Cohen – that Cohen manipulated information he presented to the relevant policymakers – is legally deficient under Rule 8 of the Federal Rules because it does not provide any notice to Cohen of what specific misrepresentation he made to, or what specific information he purposely withheld from, any policymaker (notwithstanding that defendants have produced to plaintiffs some 600 pages of intelligence reports that were presented to the policymakers).

- The cases cited in the Order do not support the claim approved by the Magistrate Judge against Cohen and that novel claim is not supported by any other legal authority known to defendants.

- The Magistrate Judge's decision to approve a claim of manipulating information is tantamount to approving a claim against Cohen for presenting "an opinion or the results of an investigation," which the Magistrate Judge already has recognized "would not on its own subject [an] official [to individual liability] (Order at 10).

---

[7] By way of example, and with all due respect to the Magistrate Judge, the Magistrate Judge failed to consider the deadlines for amendment of the complaints set forth in the CMOs; failed to consider that those deadlines had expired long before the plaintiffs filed their motions to amend; failed to consider the applicable legal standard ("good cause") set forth in the CMOs themselves and in Rule 16 for amending the CMOs to permit the amendments; failed to find "good cause" for the amendment of the CMOs; instead reversed the burden and required defendants to show "prejudice" by the proposed amendments; failed to properly consider the applicable standards under Rule 15; and, in particular, failed to take into account the plaintiffs' untimeliness and undue delay in making their motions, the fact that they could have pleaded these same claims much earlier in the litigation (if not at the outset), and the fact that plaintiffs elected not to incorporate their proposed amendments into any of the numerous prior amendments permitted them in these cases; as well as the fact that the prejudice to defendants is multiplied by the 37 cases in which the amendments were sought.

- The policies of which plaintiffs complain, which are an essential link in plaintiffs' theory against Cohen, are constitutional as a matter of law under existing legal precedents and, therefore, do not support any claim of liability against Cohen.

- The Magistrate Judge's approval of the claims against Cohen on the basis of arguments of plaintiffs' counsel in memoranda of law, reply memoranda, declarations, news articles and other information outside the pleadings – and not pled within the pleadings – is plainly contrary to law.

- The Magistrate Judge's holding that "[o]nly some of the plaintiffs' proposed amended complaints contain specific allegations regarding Cohen's misrepresentation of intelligence data" (Order at n.6), which does not cite any complaint that actually *does* contain such allegations, confirms defendants' argument that plaintiffs' claims are legally defective.

- The Magistrate Judge's decision to approve the claims against Cohen on an "all or none" basis, without regard to the actual allegations contained (or not contained) in particular complaints, was clearly erroneous and contrary to law.

- Even if the claim approved by the Magistrate Judge were legally viable, its lack of precedent in the case law as of 2004 (and now) would mean that Cohen is entitled to qualified immunity on that claim as a matter of law; and, under well settled law articulating the policies supporting qualified immunity, that immunity should be granted to Cohen at the earliest possible point so that Cohen is not distracted from his official duties by this litigation.

### *The Pleadings*

In their proposed amended complaints, plaintiffs allege that Cohen "is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, promulgation, implementation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity." See, e.g., MacNamara Second Amended Complaint ¶ 38. In several subsequent paragraphs, plaintiffs make similarly sweeping and undifferentiated allegations – unsupported by any factual pleading -- against literally scores of defendants including Cohen. See, e.g., MacNamara Second Amended Complaint ¶¶ 49-51, 69, 90, 254, 260. Those allegations – which are the only allegations in which plaintiffs make any effort to articulate what Cohen said or did that could support a cause of action against him -- wholly fail to establish any personal involvement of Cohen, much less any constitutional violation by him. See also Abdell (now Amato) Third Amended Complaint ¶¶ 15, 19, 34, 46;

<u>Phillips</u> First Amended Complaint ¶¶ 16, 29, 64, 71, 74 and 97; <u>Bunim</u> Fourth Amended Complaint ¶¶ 18, 27; <u>Grosso</u> Third Amended Complaint ¶¶ 1, 18 and 148.[8]

### A. Plaintiffs Have Not Pled The Personal Involvement Of Cohen And Have Failed To Provide Any Legal Authority To Support The Claim Against Him

In their Opposition Brief, defendants identified several fundamental defects in the claims asserted against Commissioner Cohen. Defendants noted, for instance, that "(a) Cohen had no personal involvement in plaintiffs' arrest or detention; (b) Cohen was not a supervisor of any of the officers involved in the arrest, processing or detention of plaintiffs; [and] (c) Cohen was not a final policymaker or decision-maker." Defendants' Opposition Brief at 7.

With respect to point (b), the Magistrate Judge agreed and denied the plaintiffs' motions to amend to assert a claim for supervisory liability against Cohen. Order at 9-10. The Magistrate Judge held that, as to liability arising from any supervisory fault, "[i]n the absence of any allegation of wrongdoing by the employees in the Intelligence Division that has constitutional implications, [plaintiffs'] conclusory assertion is not sufficient to establish that Cohen failed to remedy a wrong committed by those under his supervision or that he was otherwise negligent in supervising them." Order at 10. With respect to point (c), the Magistrate Judge acknowledged that the plaintiffs had conceded the point. "The City points out, and the plaintiffs do not dispute, that Cohen did not have final decisionmaking authority with respect to the relevant RNC policing procedures." Order at 10.

---

[8] For the Court's convenience, we attach an Appendix to this brief that recites what we believe to be the only pertinent allegations from these complaints that relate specifically to Cohen as opposed to an undifferentiated mass of defendants (<u>see</u> Appendix). In addition, we attach a copy of all of the proposed amended complaints that are subject to this appeal as Exhibit "F." Defendants note that, in all instances, the proposed new language is underlined, presented in bold or bracketed.

With respect to point (a), the Magistrate Judge identified five potential theories of personal involvement. Order at 9. He found viable only the theory (unpled in any complaint, as discussed more fully below) that Cohen "'formulat[ed]' policy through the presentation of distorted intelligence data that 'culminated in the formulation and adoption of the no-summons and blanket fingerprinting policies.'" Order at 10 (emphasis added). According to the Magistrate Judge, "[i]n this case . . . the plaintiffs have averred that Commissioner Cohen manipulated the information he presented to the relevant decisionmakers." Order at 11. "Cohen grossly misinformed the RNC Executive Committee . . . of the security threat posed by the people and groups who were planning to protest during the RNC." Order at 11. "If this is true, Commissioner Cohen's conduct would render him more akin to an officer who creates a false report in a false arrest or malicious prosecution case[.]" Order at 11. "Courts have found liability where an officer 'withholds relevant and material information or creates false information likely to influence a jury's decision and forwards that information to prosecutors." Order at 11.

This holding was clearly erroneous and contrary to law for several reasons. First, the plaintiffs already have conceded that Cohen did not "formulate policy." "The City points out, and the plaintiffs do not dispute, that Cohen did not have final decisionmaking authority with respect to the relevant RNC policing procedures." Order at 10. "Nor has there been an allegation that he lobbied those with final decisionmaking authority to adopt the challenged procedures as a response to the information he presented." Order at 10. "The presentation of an opinion or the results of an investigation, even if it served as justification for another official's decision to act unconstitutionally, would not on its own subject the official who forwarded the

information to individual liability." Order at 10. Therefore, there is no legal basis for a claim against Cohen on the basis that he "formulated policy."

Second, defendants have been unable to identify any complaint that actually pleads with any specificity that Cohen provided any false information to anyone, much less pleads any of the requisite particulars of such a claim, such as the content of the allegedly false statement(s) or the time, place or manner of such false statements. Nor do the complaints plead with any specificity that Commissioner Kelly actually relied upon any such false statement in adopting any particular policy; or that any such false statement actually led to the arrest or prosecution of anyone, much less any plaintiff. See FRCP 9(b); Devaney v. A.P. Chester, 813 F.2d 566 (2nd Cir. 1987) (affirming dismissal); Herlilhy v. The City of New York, et al., 2007 U.S. Dist. LEXIS 29231 (E.D.N.Y. 2007) (Johnson, J.) (dismissing complaint). After three years of intensive discovery in these cases, defendants submit that if plaintiffs had uncovered any false statement by Cohen, they should have and would have pled it in these belated complaints. This, they have simply not done.

Third, the Magistrate's holding to the effect that a claim against Cohen on the basis that Cohen "manipulated" the intelligence information appears to run afoul of recent Second Circuit authority. As articulated in the Order, this claim amounts to a claim that Cohen did not present to the policymaker (Kelly) the information that plaintiffs believe appropriate – or did not present the information to the policymaker in the manner that plaintiffs believe to be appropriate. Defendants submit, however, that the Supreme Court and the Second Circuit already have decided that such decisions are to be left to the discretion of the experts in the field. See, e.g., MacWade v. Kelly, 460 F.3d 260, 273 (2nd Cir. 2006) ("we must remember not to wrest 'from politically accountable officials . . . the decision as to which among reasonable

alternative law enforcement techniques should be employed to deal with a serious danger'"),
quoting Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 453-54 (1990).[9]

Fourth, neither the Magistrate Judge's speculation that such a pleading would render Cohen similar to "an officer who creates a false report in a false arrest or malicious prosecution case" nor the cases cited in the Order offer any legal support to this claim. In Caraballo v. The City of New York, 2007 U.S. Dist. LEXIS 39911 (S.D.N.Y. 2007) (Lynch, J.), the court addressed liability of an ordinary arresting officer under a theory of malicious prosecution. Judge Lynch observed that "any legal absolution ordinarily provided an officer by a prosecutor's decision will not preclude liability where the officer 'withholds relevant and material information' [from the prosecutor] or 'creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" The case of Mitchell v. Victoria Home, et al., 434 F. Supp. 2d 219 (S.D.N.Y. 2006) (McMahon, J.) involved similar considerations on a theory of malicious prosecution, as did the case of Brome v. The City of New York, et al., 2004 U.S. Dist. LEXIS 3943 (S.D.N.Y. 2004). In Ricciuti v. NYC Transit Authority, et al., 124 F.3d 123 (2nd Cir. 1997), the Court addressed whether ordinary arresting officers were entitled to qualified immunity in light of allegations that they "knowingly fabricated and distributed a false confession to prosecutors." Id. at 129.

These cases are very far afield from the sphere in which Cohen acted. Cohen is and was at the time of the RNC a high-level civilian executive within the NYPD (not a police

---

[9] With respect to the law enforcement and intelligence judgment at issue in MacWade, the Second Circuit emphasized that "[t]hat decision is best left to those with "a unique understanding of, and responsibility for, limited public resources, including a finite number of police officers." Id. Relying upon Supreme Court precedent, that court noted that "[c]ounter-terrorism experts and politically accountable officials have undertaken the delicate and esoteric task of deciding how best to marshal their available resources in light of the conditions prevailing on any given day. We will not – and may not – second guess the minutiae of their considered decisions." Id., citing Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 453 (1990).

officer). Cohen did not arrest any of the plaintiffs. He did not order any of their arrests. He did not initiate any of their prosecutions. He did not forward any information to a prosecutor in connection with any of them. He did not create any evidence for submission to a jury in any of their criminal cases. Unlike sworn police officers, he did not have the legal authority to do so. None of the complaints, moreover, allege that he did -- nor could they consistent with Rule 11. In short, Caraballo, Mitchell, Ricciuti and Brome are not authority for any colorable claim against Cohen. Instead, the theory of liability set forth in the Order appears to be entirely novel.

        In Defendants' Opposition Brief, at page 12, defendants articulated in detail why plaintiffs' allegations were not only insufficient but, to the extent that they were interpreted to include an allegation of "misrepresentation" by Cohen, they were made in "bad faith" because there were no facts whatsoever to support such allegations. At pages 12-13 of the Order, the Magistrate Judge apparently misinterpreted this argument as a "summary judgment" argument or an argument about the sufficiency of proof. "But discovery has not closed and the plaintiffs are not required to prove the truth of their claims at this stage." Order at 12-13. This, however, overlooks the mandate of Bell Atlantic (discussed more fully below) and of Rules 8 and 11 of the Federal Rules, both of which apply indisputably to plaintiffs' pleadings.

        Nor is the Order's final sweeping affirmation of plaintiffs' speculative claims supportable. The Magistrate Judge concluded that "Whether or not this would be enough to survive summary judgment, it is adequate to 'raise a right to relief above the speculative level.'" Order at 13. For this conclusion, the Magistrate Judge cites two "facts." First, he notes that "[t]he record indicates that Commissioner Cohen initiated the RNC surveillance program." Order at 12. Second, he recites that "[t]he plaintiffs have also pointed to a Wall Street Journal interview with Commissioner Cohen in which he discusses the role of the intelligence he

provided in justifying the no-summons and fingerprinting policies." Order at 12. But this slender reed cannot support a claim of "misrepresentation" against Cohen, first because neither "the record" nor the "Wall Street Journal" are part of the plaintiffs' pleading; and, second, because the Magistrate Judge attributed to neither any allegation of "misrepresentation" by Cohen. Even more remarkable is what remains unsaid in this portion of the Order, which purports to consider "the record" – that <u>nothing</u> in the record, including all of the intelligence information produced for plaintiffs' and for the Magistrate Judge's review in these cases was (or apparently could be) cited in support of the "misrepresentation" claim now asserted by plaintiffs. To the contrary, as defendants argued below, all of that information demonstrates the plaintiffs' lack of good faith in the pleading of this claim.

### B. The Complaints Fail To Plead Sufficient Facts To State A Claim Or To Provide Adequate Notice To Defendants Of The Claim Against Cohen

The claims asserted against Cohen are wholly devoid of any factual pleading. In <u>Bell Atlantic Corporation v. Twombly</u>, -- U.S. --, 127 S.Ct. 1955 (2007), which is cited by the Magistrate Judge as the governing authority (Order at 13), the Supreme Court held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S.Ct. at 1964-65. The Court noted that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id.</u> at 1965. "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests. . . . Rule 8(a) 'contemplates the statement of circumstances, occurrences and events

in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" Id. at 1965 n.3.[10]

Southern District judges have held to the same effect even before Bell Atlantic. See, e.g., Johnson v. United States, 2006 U.S. Dist. LEXIS 37601, *5 (S.D.N.Y. 2006) (Karas, J.) ("Complaints that rely on civil rights statutes are insufficient unless 'they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"); Hernandez v. United States, 1997 U.S. Dist. LEXIS 14256, *3 (S.D.N.Y. 1997) (Sweet, J.) (dismissing complaint *sua sponte* under Rule 8 where the claims were "'undifferentiated as to defendants and facts' and 'lacking in detail' as to . . . any correlation between the particular defendants, their acts and the claims alleged"). "[S]ince the 'plain' statement requirement of Rule 8(a)(2) is intended 'to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial,' . . . the absence of clearly articulated legal and factual allegations . . . would place the defendants in the impossible position of tilting at windmills." Id. at *5.

In each of their proposed amendments, the plaintiffs' claims against Cohen fail to meet this standard. Nowhere within the Magistrate Judge's seven-page discussion of the claims against Cohen does the Magistrate Judge find that the actual allegations within *any* of the complaints (as opposed to an amalgam of the allegations drawn together from *several* of the

---

[10] The Court emphasized the importance to the federal courts of closely inspecting such claims. "We alluded to the practical significance of the Rule 8 entitlement requirement in [a prior case] when we explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" Id. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id. (emphasis added). In short, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Id. at 1967.

complaints) sufficiently states a cause of action against Cohen under Bell Atlantic. In fact, nowhere within that section of the opinion does the Magistrate Judge so much as *refer* to any of the actual pleadings against Cohen (except paragraph 254 of the MacNamara Second Amended Complaint that the Magistrate Judge finds to be inadequate). This is for good reason. Aside from the sweeping conclusions pled in the complaints, the pleadings are wholly silent as to any activity by Cohen that could even plausibly support a cause of action against him. See Appendix (reciting the only allegations from these complaints that relate specifically to Cohen as opposed to an undifferentiated mass of defendants).

Rather than basing his holdings upon the allegations of the complaints, it appears that the Magistrate Judge based his holdings upon argument of counsel and other information provided to him by plaintiffs in the course of argument. Indeed, in assessing those claims, the Magistrate Judge repeatedly (and exclusively) cited to "Declarations" (primarily of plaintiffs' counsel), "Memoranda of Law" and "Reply" memoranda of various plaintiffs (as well as the news article from the Wall Street Journal). Order at 8-13. But this is plainly contrary to law. Defects in pleadings cannot be cured through after-the-fact argument by counsel in the form of briefs and attorney declarations. See Bell Atlantic, discussed above; Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under [Rule] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference"); Branch v. Tower Air, Inc., 1995 U.S. Dist. LEXIS 16390, *17 (S.D.N.Y. 1995) (Keenan, J.) ("memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint"); Dornfeld v. Dornfeld, 1995 U.S. Dist. LEXIS 7125, *8-9 (S.D.N.Y. 1995) (Keenan, J.) ("memoranda in opposition to a motion to dismiss cannot be used

24

to cure a defective complaint"); O'Brien v. National Property Analysts Partners, et al., 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (Leisure, J.) ("it is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss").

Put another way, the Magistrate Judge appears to have approved claims against Cohen that are not actually pled, and certainly not sufficiently pled, in plaintiffs' complaints. Indeed, in footnote 6 of the Order, the Magistrate Judge observed that "[o]nly some of the plaintiffs' proposed amended complaints contain specific allegations regarding Cohen's misrepresentation of intelligence data." The Order, however, does not cite to any complaint (as opposed to briefs and declarations) that *does* contain such "specific allegations" and defendants have searched in vain for any. Furthermore, the Order continues that "In light of the potential significance of any such misrepresentation to a finding of liability, I will condition the plaintiffs' amendment on the inclusion of allegations to this effect." Order at n.6 (emphasis added). Taken together, defendants respectfully submit that these statements confirm the defendants' argument that plaintiffs' proposed claims against Cohen were insufficient in the form proposed by them and should have been denied as a matter of law.

The Magistrate Judge's decision to approve the claims against Cohen on an "all or none" basis, without regard to the actual allegations contained (or not contained) in particular complaints, was clearly erroneous. Each of the RNC cases is a separate case that must stand or fall on its own merits including the adequacy of its pleadings. Although discovery has been consolidated, the pleadings have not been consolidated. Before approving claims to which defendants have asserted objections, therefore, the Magistrate Judge should have assessed the adequacy of the pleading in each of the complaints that asserted such claims. See Bell Atlantic

Corporation v. Twombly, -- U.S. --, 127 S.Ct. 1955 (2007) (dismissing complaint for insufficiency of pleading). This the Magistrate Judge clearly did not do.[11]

For these additional reasons, the Order is clearly erroneous and contrary to law. In addition, for the reasons discussed below, plaintiffs can assert no claim that their rights were violated on the basis of any policy that resulted from information, false or otherwise, provided by Cohen. That is because the only policies at issue here -- the NYPD's "no-summons and blanket fingerprinting policies" (Order at 9) – are constitutional as a matter of law. Plaintiffs' theory that it was unconstitutional for the NYPD to arrest and fingerprint them – essentially because they engaged in only "minor" violations of the law – is without legal support.

### C. The NYPD's Policies Of "Arresting" And "Fingerprinting" Are Lawful

Contrary to plaintiffs' arguments, they had no constitutional right to a summons rather than a custodial arrest and arraignment. In Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536 (2001), "the question [was] whether the Fourth Amendment forbids a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." 532 U.S. at 323. The Supreme Court held that there is no such prohibition and stated that "[i]f an officer has probable cause to believe that an individual has committed even a very

---

[11] In light of defendants' objections, moreover, it was improper for the Magistrate Judge to have approved (or "conditionally" approved) in footnote 6 a proposed claim against Cohen before it had been drafted, much less served upon defendants or submitted to the Court for their review. See, e.g., Colida v. Nokia America Corporation, 2006 U.S. Dist. LEXIS 64578, *6-8 (S.D.N.Y. 2006) (Pitman, M.J.) ("In making a motion for leave to amend, plaintiffs must attach a proposed amended complaint so that the Court and the opposing party has an opportunity to understand the exact changes proposed"). In any event, it was improper for the Magistrate to have invited yet another round of proposed amended complaints. As discussed more fully in Section I above, nothing in the 3-1/2 year history of these cases suggests that plaintiffs should be granted yet another opportunity to amend their complaints.

minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Id. at 354 (emphasis added).[12]

Similarly, in Sands v. City of New York, 2006 U.S. Dist. LEXIS 72111 (E.D.N.Y. 2006) (Cogan, J.), citing Atwater, Judge Cogan rejected the plaintiff's argument that custodial arrest was improper where she was arrested for littering. The Court concluded that "It may be the case that an arrest for casual littering is extreme in some circumstances, but it is less extreme when there is no dispute that plaintiff engaged in the deliberately provocative act of violating the law to show her displeasure with the officers' decision to enforce it." Id. at *13.[13] "New York law does not constrain the officers' discretion in this regard – it [provides] for warrantless arrest when an officer has probable cause to believe any offense has been committed in his presence." Id. at *15.

And, in Genia, et al. v. New York State Troopers, et al., 2007 U.S. Dist. LEXIS 19700, *37-38 (E.D.N.Y. 2007) (Bianco, J.), citing Atwater, Judge Bianco held that "as a matter of law, [the officers] had probable cause to believe that [plaintiff] had violated [New York Vehicle and Traffic Law § 1201(a) by blocking the street] and thus to arrest him." New York's Criminal Procedure Law, moreover, explicitly authorizes officers to arrest a person for "any

---

[12] The Supreme Court concluded that "Atwater's arrest satisfied constitutional requirements. . . . Atwater's arrest was surely 'humiliating,' as she says in her brief, but it was no more 'harmful to . . . privacy or . . . physical interests' than the normal custodial arrest. She was handcuffed, placed in a squad car, and taken to the local police station, where officers asked her to remove her shoes, jewelry, and glasses, and to empty her pockets. They then took her photograph and placed her in a cell alone for about an hour, after which she was taken before a Magistrate, and released on $310 bond. The arrest and booking were inconvenient and embarrassing to Atwater, but not so extraordinary as to violate the Fourth Amendment." 532 U.S. at 354-55.

[13] Judge Cogan continued that "It would be paradoxical for the law to provide that when plaintiff tears up a citation and throws it on the ground, the officers' only means of enforcement is to issue her another citation for littering, which she could then again tear up and throw on the ground with no more consequence than receiving another citation. Id. at *14-15.

offense when he has reasonable cause to believe that such person has committed such offense in his presence[.]" NYCPL § 140.10.

Nor did plaintiffs have any constitutional right to be free from fingerprinting after their arrest. In United States v. Kelly, 55 F.2d 67 (2nd Cir. 1932), the lower court had held that the government lacked the authority to take fingerprints "because of the absence of a state or federal statute providing for it" among other things. Id. at 68. On appeal, the government argued that that it had authority to take fingerprints "irrespective of statute" and that "fingerprinting is not an infringement of constitutional rights." Id. The Second Circuit agreed. "Any restraint of the person may be burdensome. But some burdens must be borne for the good of the community. . . . The slight interference with the person involved in fingerprinting seems to us one which must be borne in the common interest." Id.

The Court continued, "We find no ground in reason or authority for interfering with a method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law." Id. at 70. The Court explicitly rejected the argument that fingerprinting should be limited to instances involving serious crimes. "[A]s a means of identification, it is just as useful and important where the offense is a misdemeanor, and we can see no valid basis for a differentiation. In neither case does the interference with the person seem sufficient to warrant a court in holding fingerprinting unjustifiable. . . . It is no more humiliating than other means of identification that have been universally held to infringe neither constitutional nor common law rights." Id.

More recently, in United States v. Amerson, 483 F.3d 73 (2nd Cir. 2007), the Second Circuit recited approvingly its decision of 75 years earlier. "Many of the arguments that

28

this Court made seventy-five years ago in upholding the constitutionality of fingerprinting of arrestees – the modern technology of that day – apply equally in our own time to DNA identification." Id. at n.14 (citing Kelly). The Court added that "As a method of identification, DNA differs primarily from fingerprinting in its greater accuracy. And we do not believe that this greater accuracy meaningfully increases the privacy concerns. Indeed, arguably, the more accurate the identification method, the less intrusive it is because of the associated reduced risk that the sample will result in misidentification." Id. at 86.[14]

In short, the two policies at issue here do not support any claim against Cohen. For these additional reasons, the Order was clearly erroneous and contrary to law.

## III.

### The Order, Which Set Forth An Entirely Novel Theory Of Liability Against Cohen, Without Considering Cohen's Right To Qualified Immunity On Such A Theory, Is Clearly Erroneous And Contrary To Law

Even assuming, *arguendo*, that the complaints properly stated a claim against Cohen on the novel theory posited in the Order, the claim would be futile if Cohen were entitled to qualified immunity under that theory. Cancel v. Mazzuca, 2002 U.S. Dist. LEXIS 15201 (S.D.N.Y. 2002) (Buchwald, J.) (denying amendment to add various defendants on basis of qualified immunity); DiPace v. Goord, 308 F. Supp. 2d 274 (S.D.N.Y. 2004) (Gorenstein, J.) (same). In these cases, there is no doubt that Cohen is entitled to qualified immunity because Cohen could not have been aware of the possibility of liability under such a theory.

Government officials performing discretionary functions generally are granted qualified immunity and shielded from liability in lawsuits for civil damages unless that official is

---

[14] Nothing in the New York Criminal Procedure Law prohibits officers from fingerprinting even for minor offenses. See New York's CPL § 160.10 (1)-(2) (requiring printing in section 1 and permitting it in section 2).

shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Conn v. Gabbert, 526 U.S. 286, 290 (1999). The first question, therefore, is whether a plaintiff has alleged facts which establish that the official's conduct violated a constitutional right. Wilson v. Layne, 526 U.S. 603, 609 (1999); Siegert v. Gilley, 500 U.S. 226, 232-233 (1991); County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998); Saucier v. Katz, 533 U.S. 194, 201 (2001).

Assuming that the first prong is satisfied – that is, a constitutional violation is established on the facts alleged by a plaintiff – "the next, sequential step is to ask whether the right was 'clearly established'" at the time of the alleged incident. Saucier, 533 U.S. at 201. The relevant inquiry here is whether it should have been clear to a reasonable official that his conduct was unlawful in the situation he confronted. Id. at 202. The contours of the right must be sufficiently clear that a reasonable official should have understood that what he was doing violated that right. Id. It is not enough that the applicable, general constitutional principle be established, rather the "right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Id. at 201-202.

In other words, "if the law did not put the [official] on notice that his conduct would be clearly unlawful," then qualified immunity applies. Id. Qualified immunity operates to protect officials from the "sometimes hazy border" between unreasonable and reasonable, and to ensure that before they are subject to a lawsuit, the officials are on notice that their conduct is unlawful. Saucier, 533 U.S. at 206. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate [clearly established] law." Anderson v. Creighton, et al., 483 U.S. 635, 638 (1987). The unlawfulness of the official's conduct in light of the pre-

existing law must be apparent. Id. at 640. "For executive officers in general . . . qualified immunity represents the norm." *See* Anderson, 483 U.S. at 642.

According to the Supreme Court, qualified immunity is "an *immunity from suit* rather than the mere defense to liability; and like absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (reversing district court's denial of qualified immunity). As such, the "qualified immunity defense must be considered in proper sequence." Saucier, 533 U.S. at 200. Where a government official seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial may be avoided. Id. As such, it is imperative that "qualified immunity questions be resolved at the earliest possible stage of litigation" in order to satisfy the goal of the doctrine. Id. at 201.[15]

## A. Cohen Is Entitled To Qualified Immunity

Here, Cohen is entitled to qualified immunity from any civil liability arising from his conduct as Deputy Commissioner For Intelligence. First, for all of the reasons set forth in Section II above, the factual allegations asserted by plaintiffs against Cohen are not sufficient to establish that Cohen violated any constitutional right. Even if the Court finds that plaintiffs have alleged sufficient facts to establish that Cohen's conduct violated their constitutional rights,

---

[15] According to the Supreme Court, even pretrial matters such as discovery should not be allowed until the issue of qualified immunity is resolved. Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1982). The Supreme Court in Harlow was not only concerned with personal monetary liability, but also "the general costs of subjecting officials to the risks of trial -- distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." 457 U.S. at 816. The Harlow Court substantially reshaped the qualified immunity principles in order to permit resolution of insubstantial claims and avoid "[subjecting] government officials either to the costs of trial or to the burdens of broad-reaching discovery." Id. at 817-818. Inquiry into the official's motivation may entail broad-ranging discovery, which can be peculiarly disruptive of efficient government administration. Id. at 817. Therefore, unless a plaintiff's allegations state a claim of violation of clearly established constitutional rights, qualified immunity entitles a defendant to dismissal prior to the commencement of discovery. Mitchell, 472 U.S. at 526.

defendants submit that it would not have been clear to a reasonable official in Cohen's position that his conduct was unlawful. That is because, as discussed more fully in Section II above, there is no published law of any kind that supports plaintiffs' claims against Cohen. In the Order, the Magistrate Judge has cited to none; in their papers, the plaintiffs have cited to none. None of the cases cited in the Order "clearly establish" that a public official who provides information to another public official can be held liable to a member of the public on the basis of the information passed under the circumstances here.

Accordingly, no reasonable official in Cohen's position could have known that his conduct violated any clearly established constitutional right at that time. Even if the constitutionality of the NYPD's policies remained untested questions at the time that Cohen acted (contrary to all of the foregoing authority), Cohen still would be entitled to qualified immunity.[16] For these additional reasons, the claims against Cohen are futile, should have been denied, and the Magistrate Judge's failure to deny them was clearly erroneous and contrary to law.

---

[16] Within the historical context, Cohen's actions are entirely justified. Just three years prior to the RNC, New York City fell victim to the September 11th terrorist attacks. It was reasonable that, in planning for the RNC in New York City, a person in Cohen's position -- in an effort to reduce the risk of a terrorist attack -- took into account the plausibility of various threats of violence and destruction posted on websites and other public forums that ultimately resulted in the formulation of the RNC policies now in dispute. In a similar case in 2005, Cohen's recommendation to Commissioner Kelly, in part, resulted in the implementation of the random bag search program in the New York City subways -- a program whose constitutionality was upheld by Judge Berman – and upheld by the Second Circuit. See Macwade v. Kelly, 2005 U.S. Dist. Lexis 39695, aff'd, 460 F.3d 260 (2d Cir. 2006). In his opinion, Judge Berman found Cohen to be "clearly an expert in the field of terrorism and counter-terrorism, and how New York City combats terrorism."

## IV.

### The Order, Which Approved Insufficiently Pled and Legally Moot Claims Against Defendants, Is Clearly Erroneous And Contrary To Law

Plaintiffs also have asserted claims challenging the constitutionality of the "parading without a permit" and "disorderly conduct" statutes both on their face and as-applied. Defendants have objected to those claims on various grounds. See Defendants' Opposition Brief at 13-20. The Magistrate Judge permitted those claims to proceed except as to the facial challenge to the disorderly conduct statute. Order at 13-21. Defendants submit that the remaining claims are defective for all of the reasons articulated in Defendants' Opposition Brief.

In particular, the facial challenge to the parading statute is plainly moot. The Magistrate Judge held that "it may well be that the request for declaratory and injunctive relief on the grounds that the [parading] ordinance is overbroad is moot." Order at 14. Nevertheless, the Magistrate Judge appears to have permitted the claim. Id.

The Order then proceeds on the basis that "there has been no definite ruling that the NYPD's new regulation withstands constitutional scrutiny." Order at 15. But plaintiffs, whose claims in these actions have nothing to do with the new version of the statute, surely are not entitled to challenge the new statute in these actions, for lack of standing and injury at the very least. In any event, they have not pleaded any basis to challenge the new version of the statute in their complaints.

In addition, defendants submit that those claims, and particularly the "as-applied" claims against both statutes, are insufficiently pled under Bell Atlantic for all of the reasons outlined above. Plaintiffs simply have not pleaded their theory, much less "facts" to support their theory, sufficient to put defendants on notice of the claims against them.

33

Finally, the Magistrate Judge failed to assess the defendants' argument that any claim against the individual defendants under these theories (particularly insofar as plaintiffs assert claims based upon the new parading statute) would be barred, as a matter of law, by qualified immunity. For all of these reasons, the Order is clearly erroneous and contrary to law.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court issue an order (1) reversing the Order of the Magistrate Judge insofar as it permitted the amendments to which defendants objected; (2) dismissing all of the proposed amendments to which defendants objected, including all of the claims against Cohen, with prejudice; and (3) finding in favor of Cohen on qualified immunity.

Dated:    February 25, 2008
          New York, New York

                    Respectfully submitted,

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    *Attorney for Defendants*

By: _____

James Mirro (JM 2265)
Raju Sundaran (RS 8011)
Special Federal Litigation Division
100 Church Street, Room 3-130
New York, New York 10007
Tel: 212.788.8026
Fax: 212.788.9776

<u>**APPENDIX**</u>

1.    Second Amended Complaint in <u>MacNamara, et al. v. City of New York, et al.</u>, 04 CV 9216 (RJS)(JCF)

    a.    ¶ 38: "Defendant DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity."

2.    Third Amended Complaint in <u>Abdell, et al. v. City of New York, et al.</u>, 05 CV 8453 (RJS)(JCF)

    a.    ¶ 19: "In preparation for the RNC, defendant Cohen, who was the Deputy Commissioner for Intelligence for NYPD, directed a surveillance campaign of individuals and groups. The intelligence, and the interpretation of that intelligence, which was provided to defendants KELLY and others in the NYPD, grossly misinformed NYPD planners concerning what could be expected to occur during the RNC, and encouraged and created a climate of hostility towards protestors. COHEN improperly conflated protestors' planned activities with civil disobedience, violence, violent anarchism and terrorism.

    b.    ¶ 34: "Upon information and belief, defendants MONAHAN and GALATI ordered this mass arrest in accordance with the mass arrest tactics developed and adopted by policymaking officials of the New York City Police department, including defendants BLOOMBERG, KELLY, COHEN, and THE CITY OF NEW YORK."

3.    Third Amended Complaint in <u>Grosso v. City of New York, et al.</u>, 05 CV 5080 (RJS)(JCF)

    a.    ¶ 18: "Defendant DAVID COHEN is the Deputy Commissioner for Intelligence for the New York Police Department and is sued both in his individual and official capacities."

4.    First Amended Complaint in <u>Phillips, et al. v. City of New York, et al.</u>, 05 CV 7624 (RJS)(JCF)

    a.    ¶ 16: "DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part. For the creation, implementation,

promulgation and enforcement of the policies, practices and or customs complained of herein. He is sued individually and in his official capacity."

b.  ¶ 64: "Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and created a climate of violence and/or violent anarchism and terrorism. The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC. arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time."