UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

RNC CONSOLIDATED CASES (RJS) (JCF)

-----------------------------------------------------------------x

### DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR OBJECTIONS TO THE ORDER OF MAGISTRATE JUDGE JAMES C. FRANCIS IV GRANTING PLAINTIFFS' MOTIONS TO AMEND THEIR COMPLAINTS

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorneys For Defendants*

James Mirro
Raju Sundaran
Special Federal Litigation
100 Church Street, Room 3-130
New York, New York 10007
212.788.8026 (ph)
212.788.9776 (fax)

APRIL 10, 2008

## ARGUMENT

Defendants submit this reply memorandum in further support of their Rule 72 objections filed on February 25, 2008 ("Defendants' Appeal Brief").[1] Plaintiffs responded in a consolidated brief dated March 17, 2008 ("Plaintiffs' Brief"). In that Brief, plaintiffs have offered no opposition to many of the arguments made by defendants. Where they have responded, they have frequently misstated the applicable law or facts, which we address here.

### I. Defendants Have Preserved Their Objections

As a preliminary matter, plaintiffs wrongly argue that the order of the Magistrate Judge (the "Judge") should not be reversed because "granting permission to amend is, under any circumstances, a discretionary decision." Plaintiffs' Brief at 1. Plaintiffs misstate the law. The law provides that the Judge's discretion is expressly limited by Rule 72, which provides that "[t]he district judge [shall] modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." See Rule 72; MacNamara, et al. v. The City of New York, et al., 2008 WL 858679 (S.D.N.Y. 2008) (RJS). Plaintiffs also wrongly argue that the defendants "improperly raise numerous arguments for the first time." Plaintiffs' Brief at 1-2 & n.1. In defendants' brief opposing amendment of the 37 complaints ("Brief Below," Exhibit (Exh.) "D"), defendants repeatedly pointed to plaintiffs' "undue delay" in seeking to amend and to the resulting "prejudice" to defendants. See, e.g., Brief Below at 1-4.[2] Defendants made their

---

[1] Exhs "A" through "F" are attached to the Declaration of Raju Sundaran (February 25, 2008); Exhs "G" through "S" to the Declaration of Raju Sundaran (April 7, 2008).

[2] In the first line of their Brief Below, defendants wrote that "Just a few months prior to the close of discovery, plaintiffs belatedly move for leave to file amended complaints adding numerous new defendants and a variety of newly asserted federal and state law claims." Brief Below at 1. Defendants' "undue delay" arguments implicitly invoke the deadlines set forth in the CMOs (which set a variety of deadlines for the RNC cases) and invoke the good cause standard for modifying the CMOs (which is set forth explicitly both in the CMOs and in the text of Rule 16(b)). Defendants quoted a recent Southern District case that expressly contemplated whether Continued...

objections to plaintiffs' undue delay and prejudice applicable to each of the proposed amendments. See, e.g., Brief Below at 1 n.1 ("Defendants have objections to all of the plaintiffs' complaints as set forth herein, except Schiller and Dinler"). Contrary to plaintiffs' argument, there was no need for defendants to repeat each of these arguments as to each of the 37 proposed complaints and as to each and every new claim and new party that plaintiffs sought to add.[3]

## II. By Overlooking Plaintiffs' Delays In Seeking The Amendments, Plaintiffs' Seriatim Prior Amendments, The Resulting Prejudice To Defendants, And Applicable Law Requiring Consideration Of Such Factors, The Order Was Clearly Erroneous And Contrary To Law

In their Appeal Brief, defendants identified a series of material errors committed by the Judge. Defendants recited that the Judge failed to consider the deadlines for amendment of the complaints contemplated by Judge Karas' orders and by the CMOs; failed to consider that those deadlines had expired long before the plaintiffs filed their motions to amend; failed to consider the applicable legal standard ("good cause") set forth in the CMOs themselves and in Rule 16 for amending the CMOs to permit the amendments; failed to find "good cause" for the amendment of the CMOs; instead reversed the burden and required defendants to show "prejudice" by the proposed amendments; failed to properly consider the applicable standards under Rule 15; and, in particular, failed to take into account the plaintiffs' undue delay in making their motions, the fact that they could have pleaded these same claims much earlier in the

---

"the motion to amend is timely within the context of the Court's prior scheduling orders." Brief Below at 4, quoting Silkroad Associates. Defendants also argued that plaintiffs' proposed amendments would result in "undue prejudice" to defendants. See, e.g., Brief Below at 1-4, citing Zenith Radio Corp. (district court should examine the nonmoving party's time and expenses spent preparing for trial in reliance on prior pleadings and the potential expenses necessary to address issues raised by proposed amendments). In addition, defendants asserted that plaintiffs' proposed amendments were "futile." See, e.g., Brief Below at 1-4.

[3] The cases cited by plaintiffs to the effect that an objecting party may not raise new arguments on appeal are not instructive here. See Robinson; Travelers; Mills; Abu-Nassar.

2

litigation (if not at the outset), the fact that plaintiffs elected not to incorporate their proposed amendments into any of the numerous prior amendments permitted them, and that the prejudice to defendants was multiplied by the 37 cases in which the amendments were permitted. See Appeal Brief at 5-15 & n.7.

### A. The Court's Orders Established Mandatory (Not Optional) Deadlines

In response to the foregoing points, plaintiffs argue that the CMO in MacNamara (Exh. "B") "has long been inoperative, even in its amended version." Plaintiffs cite no authority of any kind for that argument. On March 19, 2008, moreover, the Judge expressly rejected that argument when he held that "While some of the Case Management Orders were extended de facto by the master deposition scheduling order, there was no basis for assuming that they had been abandoned altogether." Order of March 19, 2008 ¶ 2 (Exh. "G").[4] The master deposition scheduling order was entered July 5, 2007 – long after the pleadings in all of the RNC cases were closed pursuant to the CMO (see Exh. "H"). Any extension of discovery deadlines (which came after the deadline for plaintiffs to amend their complaint) did not relieve the plaintiffs of that earlier deadline. Thus, all of the examples cited by plaintiffs about the parties engaging in acts after the deadlines set in the CMO (e.g. discovery and dispositive motion practice) miss the point entirely.[5] Moreover, plaintiffs in MacNamara (and in all of the RNC cases) expressly stipulated to the CMOs including the pleading deadline. In fact, the July 15, 2005 date was set by Judge

---

[4] That order was entered in response to defendants' request to compel plaintiffs to narrow their list of some 700 nonparties, so that defendants could take only the necessary nonparty depositions. Defendants agreed with plaintiffs that the CMOs were adjusted with respect to deposition deadlines, but that rationale does not apply to deadlines that had already expired years ago (e.g. amendments to complaints).

[5] Like the order in which the Judge effectively extended discovery deadlines in the CMOs, the Judge issued a separate order suspending the dispositive motion deadlines in the CMOs (Exh. "I"). In contrast, the Court never extended the MacNamara deadline beyond July 15, 2005.

3

Karas at plaintiffs' request after plaintiffs wrote to the Court that they needed more time because "[o]ur law office has unexpectedly lost our lease." (See Order of July 19, 2005, Exh. "J", providing that "plaintiffs shall file their amended complaint by July 15, 2005").[6] Plaintiffs never sought any subsequent extension on that deadline. Thus, plaintiffs' motion to amend, filed in August 2007, was two years late.

Certain plaintiffs also argue that they should be relieved of the consequences of their extreme delay in seeking the amendments because some of the CMOs in the RNC cases lacked a specific deadline for the amendment of the complaints. In this category, plaintiffs recite eight cases in which Jeffrey Rothman is plaintiffs' counsel. See Plaintiffs' Brief at 3 n.3. Plaintiffs miss the point. During a conference with the parties on April 21, 2005, Judge Karas directed that the RNC cases shall be consolidated and that, in each case, "the parties shall submit a proposed case management order modeled on the case management order entered by this Court in MacNamara." That direction was memorialized in a proposed order -- to which all of the plaintiffs stipulated – that was executed on October 3, 2005 (Exh. "C" at ¶¶ 15-16).[7] All plaintiffs' counsel, therefore, were on notice (and indeed consented) that the Court would impose a deadline for the amendment of the complaints early within the schedule established by the CMO in each of the RNC cases (as it had in MacNamara).

---

[6] Plaintiffs' argument in effect that the pleading deadline – the earliest of the deadlines set by the CMO – was merely advisory invites chaos. If plaintiffs believed, as they argue now, that that deadline was "wholly divorced from the reality of [these] cases," they should have sought an extension.

[7] The order provided that it addressed both preexisting and anticipated RNC cases; and that plaintiffs' counsel who intended to bring future cases "have agreed that the terms of this order shall govern any new RNC cases[.]" The names of those counsel -- who expressly agreed both in open Court before Judge Karas and before the proposed order was forwarded to the Court for approval – include "Martin Stolar, Gideon Oliver, Norman [] Best, Susan Taylor, Michael Spiegel, Jeffrey Rothman, John [] Upton, Alan D. Levine and Alan Levine." Order at ¶ 16.

As we discussed above, in MacNamara, the Court set July 15, 2005 as the deadline for amendment of the complaint. Among the latest RNC cases commenced, the Court set a deadline of May 1, 2006 in Tikkun and of June 1, 2006 in Portera (Exhs "K"-"L").[8] In the CMOs of the eight cases brought by Jeffrey Rothman, if they were "modeled on the case management order entered by this Court in MacNamara" (pursuant to Judge Karas' order), those deadlines would have fallen before May 1, 2006 (in Coburn, et al.); and before July 1, 2006 (in Drescher), which are the dates set in those CMOs for service of written discovery. At the latest, the deadlines for amendment of the complaints would have fallen long before the close of fact discovery in those CMOs, which was set for September 1, 2006 at the latest (in Drescher). Plaintiffs delayed their motion to amend for another 12 months past that latest-possible date. Plaintiffs did so knowing that the Court had long since ordered "[n]o further extensions" to those particular CMOs (Exh. "O").

Thus, it was clear error and contrary to law for the Judge to have overlooked these matters after defendants objected on the grounds of delay. See Nairobi Holdings Limited v. Brown Brothers Harriman & Co., 2006 U.S. Dist. LEXIS 9931, *20 (S.D.N.Y. 2006) (Katz, M.J.) (where scheduling order sets deadline for amendment of the complaint, motion to amend was governed by that order and by good cause standard under Rule 16(b)); Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003); Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-41 (2d Cir. 2000) (same).

---

[8] CMOs in other cases provide similar deadlines for amendments: See, e.g., Wrobleski, et al. (December 1, 2005) (Exh. "M"); Black, et al. (December 30, 2005) (Exh. "N").

### B. The Magistrate Judge Did Not Consider Whether The Plaintiffs Had Established Good Cause For Amendment Of The CMOs – And Plaintiffs Have Not Done So

As explained in defendants' Appeal Brief, the Judge never considered whether the plaintiffs had good cause for amendment of the CMOs – and plaintiffs never made that showing below. Thus, plaintiffs' argument on this appeal that they have good cause should be rejected as untimely. If the Court entertains that argument, it should be rejected on its merits. Plaintiffs argue chiefly that "defendants made it impossible . . . to meet the CMO deadlines" because "defendants did not identify [Cohen] as a relevant witness in the RNC cases until December 2006." Plaintiffs' Brief at 3-4. This, of course, is a transparent pretext for plaintiffs' extreme delay in seeking the wide range of amendments they now seek.

Plaintiffs were, in fact, on notice of Commissioner Cohen's identity at least as early as December 2005, when he was identified in the deposition testimony of Chief Terence Monahan (who was among the first defense witnesses deposed). Cohen again was identified repeatedly during the July 2006 deposition of the Chief of Department Joseph Esposito (the highest ranking uniformed member of the service).[9] Thus, plaintiffs had ample notice of Cohen as a potential defense witness by July 2006, but failed to seek any amendment to name Cohen in their complaints until August 2007. Notably, the NYCLU never named Cohen as a defendant in Dinler and Schiller (although they have amended their complaints on several occasions), presumably because they do not consider him an important defendant.

Even if plaintiffs' argument that "defendants did not identify Cohen [] until December 2006" were credited, however, it would not explain the plaintiffs' delay in seeking the vast majority of the amendments that plaintiffs now seek. Almost all of those amendments have

6

nothing whatsoever to do with Cohen. Plaintiffs have failed to explain, for instance, how their eleventh-hour proposal to add claims to challenge the constitutionality of the "parading without a permit" and "disorderly conduct" statutes; or their claims based upon the denial of a right to a "fair trial;" or their claims for "supervisory liability;" or any of the other claims that they now seek to add resulted from defendants' identification of Cohen. With respect to those proposed amendments that are not related to defendants' identification of Cohen, plaintiffs have failed to offer any legitimate excuse why they waited until August 2007 to propose those amendments.[10]

Plaintiffs ask the Court to accept the argument that they engaged in this extensive delay to "avoid burdening the Court with multiple, incremental motions to amend," suggesting that this is the first time that they have sought to amend. Plaintiffs' Brief at 5. The truth, however, is starkly different. In the Judge's order, he recites early on that "the proposed amended complaints in the pending motions may be the first, second, third, or fourth amended complaints." Order at 2. That hardly tells the story. A review of the proposed amendments shows that at least one of those complaints is in its sixth edition (Fifth Amended); fully 15 complaints are in their fifth iteration (Fourth Amended); 4 are in their fourth version (Third Amended); 6 are in their third draft (Second Amended) and 9 are in their second edition (First Amended). Contrary to plaintiffs' argument, none of the plaintiffs have withheld their

---

[9] See excerpts from the Deposition of Terence Monahan at 73-81 (Exh. "P"); and from the Deposition of Joseph Esposito at 184-94, 357-63, 467-68, 712-13, 777-80, 794-99 (Exh. "Q").

[10] Plaintiffs' general argument that defendants produced witnesses for deposition too slowly fails for the same reason – plaintiffs fail to explain how the new claims proposed relate (if at all) to that testimony. Only the identification of the names of certain defendants could have been delayed by the pace of discovery; but on that score, it is worth noting that plaintiffs in the MacNamara case (and almost all other plaintiffs) failed to notice any defense witnesses for deposition until the waning months of 2006. Their belated complaints to Magistrate Francis (dated April and May of 2007) demonstrate plaintiffs' lack of diligence in pursuing discovery.

7

amendments. Rather, plaintiffs have amended their complaints at will. Thus, plaintiffs' self-serving argument that they delayed to avoid burdening the Court should be rejected.[11]

In any event, plaintiffs' argument appears to turn on its head the role of the Court in managing its docket – and the obligation of the parties to comply with Court orders. In these cases, Judge Karas and Magistrate Francis issued these numerous scheduling orders in an effort to manage this unwieldy litigation. It was not for plaintiffs -- unilaterally and without seeking the Court's permission – to decide not to comply with those orders. As defendants have suggested above, the traditional and proper course would have been for the plaintiffs to seek an extension on their deadline. Plaintiffs should not now be excused for their defaults after arrogating unto themselves the decision whether to comply with the Court's orders.[12]

In short, plaintiffs in these cases have failed to show that they were diligent in bringing their motions in August 2007 or that there is good cause to permit them a belated motion to amend – and it is plaintiffs' burden to make both showings. "Good cause in this context has been interpreted to mean that scheduling deadlines could not be met despite a moving party's diligence." See Nairobi Holdings, supra, at *20 (holding that motion to amend

---

[11] Notwithstanding plaintiffs' numerous prior amendments, plaintiffs elected not to name Cohen (or to seek the other amendments that they now seek) until August 2007.

[12] Plaintiffs argue that, "[u]nlike the cases cited by defendants . . . when plaintiffs moved to amend in late August 2007, discovery was still in full swing, with many months to go." Plaintiffs' Brief at 5. Plaintiffs' argument overlooks the deadlines in the CMOs and Magistrate Francis' order (Exh. "G") that expressly rejected the argument that the deadlines in the CMOs had been abandoned. Plaintiffs' argument also misrepresents the case law, in which Courts routinely have denied amendments before the close of discovery on the grounds set forth above. See, e.g., Nairobi Holdings, supra, at *17-25; Credit Suisse First Boston at *3, *10 (full cite in Appeal Brief); O'Sullivan; PKFinans, infra, at *4-9. Plaintiffs also argue that "failure to act on acquired knowledge" does not mandate denial of the amendments. Plaintiffs' Brief at 6. That is another way of saying that delay alone is insufficient to deny the amendments. Defendants have not asked the Court to reverse on the grounds of "delay alone" but on the basis of the numerous factors cited by defendants (including expiration of the CMO deadlines, failure to show good cause for extension of deadlines, further delay, numerous prior amendments, and prejudice).

8

was governed by Rule 16(b) and that plaintiff failed to show diligence and failed to show good cause under Rule 16(b)); Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003) (same); Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-41 (2d Cir 2000) (same). "Moreover, while the absence of prejudice to a nonmoving party may be relevant to leave to amend under Rule 15(a), it does not fulfill the good cause requirement of Rule 16(b)." Nairobi Holdings at *20. "The Second Circuit has noted that 'if we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rule[s]." Id. at *19. Accordingly, plaintiffs have failed to establish good cause for any extension on the deadlines for amending the complaints.

### C. The Order Failed To Properly Assess The Prejudice To Defendants

Plaintiffs next argue that "defendants make no argument that [the Magistrate Judge's] conclusions [concerning the prejudice to defendants] were contrary to law." Plaintiffs' Brief at 7. Defendants, of course, made precisely that argument. See Appeal Brief at 12-15. Defendants emphasize that, under the authorities cited in their Appeal Brief and above, it was plaintiffs' burden to show good cause for an amendment of the CMOs to permit an untimely motion to amend, which the Judge overlooked. It was also error for the Judge to have reversed the burden by requiring the defendants to show undue prejudice. Having done so, however, the Judge committed a third error by not properly applying Second Circuit precedent to the effect that "the longer the period of an unexplained delay [in seeking an amendment], the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Associates, 988 F.2d 344, 350 (2nd Cir. 1993). Under this standard, considering the extensive (and unjustified) delays discussed above, and the prejudice discussed in defendants' Appeal Brief and here, the amendments should have been denied.

Among other errors in the Judge's assessment of prejudice, he held that "the majority of [the new defendants] are already named in [] RNC cases, and they appear to have all been deposed already or scheduled for deposition." Order at 5. This conclusion is plainly incorrect.[13] With respect to the new claims, they too will require further discovery, they will complicate dispositive motions (because defendants will be obligated to investigate them and to seek their dismissal if warranted) and they will complicate trial (because additional claims complicate civil trials). In particular, new claims asserted against Commissioner Cohen, members of the NYPD Legal Department, and the City are highly prejudicial. Those claims include serious and unsupported allegations that defendants "institut[ed] a system of perjured sworn statements to attempt to justify [unlawful arrests]" and "creat[ed] arrest paperwork [that] contained knowingly false statements." See MacNamara Complaint (¶¶ 2, 56, 66, 72(H-I), 223, 227, 231, 235, 254 and 260) (Exh. F-1). In addition, as discussed more fully in defendants' Appeal Brief, plaintiffs now claim that Cohen falsified intelligence data.

These allegations, which amount to new claims of a massive conspiracy within the NYPD to commit fraud, change the character of this litigation dramatically and increase the potential liability of defendants, resulting in serious prejudice to defendants. See PKFinans International Corporation v. IBJ Schroder Leasing Corporation, 1996 U.S. Dist. LEXIS 2177, *6-11 (S.D.N.Y. 1996) (Scheindlin, J.) (holding that the new claims would not be permitted

---

[13] In MacNamara alone, numerous newly proposed defendants have not been deposed – Chief Nicholas Estavillo, Captain Matthew Hyland, Captain Chris Monahan, Captain Jaskaran and PO Kevin Scott – and plaintiffs presumably will seek those depositions. If all of the newly proposed defendants were added as defendants, even if they were deposed, it would complicate dispositive motion practice (because defendants have an obligation to represent each of them, to investigate defenses available to them and to seek their dismissal if warranted) and will complicate trials (because additional defendants add to the complexity of civil trials). It is not appropriate, as plaintiffs do, to simply shrug at the considerable additional burdens imposed on defendants and defense counsel by the addition of hundreds of new defendants at the last minute.

10

"because the proposed fraud claims would dramatically alter the nature of the lawsuit [and] the introduction of the claims would be prejudicial").[14] In addition, if the new claims against Cohen are permitted, plaintiffs undoubtedly will seek still more discovery including additional depositions on intelligence issues after they have concluded their deposition of Cohen. This will extend discovery in these cases, require additional motion practice before Your Honor and Judge Francis, and further delay ultimate resolution of these cases – all to the further prejudice of defendants. After 3-1/2 years of preparing to try these cases on the basis of the existing pleadings – and in light of the very considerable expense associated with that undertaking – it is highly prejudicial and simply unfair to defendants to permit plaintiffs this wholesale revision.

### III. The Claims Against Cohen Are Fatally Defective

Plaintiffs argue that "the amended complaints specifically allege that [Cohen's] actions and omissions caused the plaintiffs' unlawful arrests" but plaintiffs fail to refer the Court to any particular paragraph in any of the complaints. Plaintiffs' Brief at 9. Plaintiffs argue that

---

[14] Plaintiffs cite to passages in the Magistrate Judge's order to the effect that the additional discovery obligations of defendants resulting from the "parading without a permit" and "disorderly conduct" claims will not prejudice defendants. Plaintiffs' Brief at 8-9. These optimistic assessments, however, already have proven false. Plaintiffs already have served burdensome document requests that seek precisely the kind of sweeping documentary evidence that the Magistrate Judge presumes will not prejudice defendants. In plaintiffs' "Fourth Set of Requests for Production of Documents," for instance, plaintiffs sought "Any and all documents concerning all criminal court summons[es] issued by any member of the [NYPD] from July 1, 2004 to October 31, 2004, including, inter alia, a copy of the summons itself and any summons logs." Document Request #12. That discovery, even if limited to the summonses themselves as opposed to "any and all documents concerning" those summonses, would be extremely burdensome. The NYPD does not file summonses in a central location, nor does it maintain electronic copies of summonses. Collecting summonses would involve physically collecting them from 94 separate commands. Those summonses then would have to be copied one at a time on a copying machine or scanner. The NYPD estimates that two detectives assigned exclusively to such a project, with a supervisor overseeing their activities, would need 4-6 months to complete it. Plaintiffs have not stopped there. Plaintiffs recently have moved to compel complete responses to this request. Plaintiffs also served a subpoena upon the New York City Criminal Court for the same burdensome information.

"the proposition asserted in the amended complaints as to how [Cohen] caused a violation of plaintiffs' rights is a simple one," but plaintiffs then take approximately four pages (from pages 9 through 12) attempting to explain it. In so doing, defendants note that plaintiffs have abandoned the version of the complaint that they had submitted to the Judge for approval. Instead, they now rely upon a modified version of the complaint that they filed <u>after</u> the Judge's order. Plaintiffs' Brief at 10 (referring to "as filed" version of complaint). This is completely improper.[15] In any event, plaintiffs' decision to abandon their earlier pleading is a clear concession that the earlier version of their complaint was seriously defective.

        Plaintiffs then argue that "[i]t is that causal link between Cohen's alleged fabrication and distortion of intelligence information and the violation of plaintiffs' rights" that supports the cause of action against him. Plaintiffs' Brief at 11. Plaintiffs, however, have failed to address the serious errors identified by defendants. Plaintiffs, for instance, fail to refer the Court to any allegation (much less to any allegation that is pleaded with the requisite particularity) that Cohen provided any "false" information to anyone; or that Kelly actually relied upon any such false information in adopting the policies at issue; or that any such false information was either the "but for" or "proximate" cause of the arrest of any of the plaintiffs in these cases. Allegations such as these would be essential even under the notice pleading standard of Rule 8. See <u>Bell Atlantic v. Twombly</u>, -- U.S. --, 127 S.Ct. 1955 (2007). Plaintiffs' failure to incorporate them in a pleading of fraud or false statement, where a heightened pleading standard applies, is fatal to their claim. See, e.g., <u>Shelly v. Brandveen</u>, 2006 U.S. Dist LEXIS

---

[15] Because the Magistrate Judge's order is based upon the complaint <u>as submitted to him</u>, and the appeal was taken from that order, defendants limit their analysis to the earlier version of the complaint. Defendants do not waive, and hereby expressly reserve, their right to move to dismiss each of the amended complaints "as filed."

15487, *9-13 (E.D.N.Y. 2006) (Garaufis, J.) (dismissing Section 1983 complaint that alleged fraud on grounds that it was not adequately pleaded under Rule 9(b)).

Putting aside the complete failure of plaintiffs to <u>plead</u> the claim that they argue in their briefs, plaintiffs have failed to articulate even in their briefs a viable cause of action against Cohen. Among the most serious defects in plaintiffs' theory against Cohen is that the causal link between any conduct of Cohen on the one hand, and the alleged violation of plaintiffs' constitutional rights on the other, is far too attenuated to support liability against Cohen. This flaw is apparent from plaintiffs' own articulation of their theory: "[Cohen] knew or should have known that, when he falsely informed those officials that the plaintiffs' protests would be violent and unlawful, the defendants would adopt policies, such as the no-summons and fingerprint policies, that would determine how the NYPD would arrest and detain persons arrested during the RNC." Plaintiffs' Brief at 11. This theory would fail as a matter of law even if it were actually pleaded. See, e.g., <u>Martinez v. California</u>, 444 U.S. 277, 279, 285 (1980) (affirming dismissal of Section 1983 complaint on ground that the complaint failed to state a claim for relief under federal law where the injury alleged was "too remote a consequence of the [state actor] to hold [him] responsible under the federal civil rights law" and concluding that "it is perfectly clear that not every injury in which a state official has played some part is actionable").[16]

---

[16] See also <u>Taylor v. Brentwood Union Free School District</u>, 143 F.3d 679, 686-88 (2d Cir. 1998) (reversing judgment on jury verdict in favor of plaintiff in Section 1983 case on grounds that defendants' act was not the cause of the plaintiff's injury where there existed a superseding cause; recognizing that "[t]he Supreme Court consistently has refused to impose § 1983 liability upon defendants where the causal connection between the conduct and the constitutional injury is remote rather than direct;" and holding as a matter of law that "because no reasonable factfinder could conclude that Rooney was the cause of any constitutional harm or injury to Taylor, Taylor cannot prevail in this § 1983 action"). The Second Circuit cited its own prior decisions to the same effect.

13

Plaintiffs do not contest that the policies of the NYPD to arrest and fingerprint individuals who violated the law were constitutional – and the Court should so find as a matter of law. In a footnote, plaintiffs argue only that the selective <u>application</u> of those policies was unconstitutional. Plaintiffs' Brief at 10 n.11. This further severs the causal link between Cohen and the alleged constitutional violations because plaintiffs do not allege that Cohen had anything whatsoever to do with the "application" of those policies. Nor do they dispute that Kelly – not Cohen -- was responsible for the adoption <u>and</u> application of those policies, which further severs that causal link. In addition, plaintiffs' argument that qualified immunity does not apply "where there is an allegation of intentional wrongdoing or deliberate indifference" (Plaintiffs' Brief at 16) is inapplicable here because <u>none</u> of the plaintiffs have alleged that the conduct of Cohen about which they complain was either "intentional" or "deliberately indifferent." See Appendix to Appeal Brief; Exhs F1-35. These are fundamental defects that plaintiffs cannot overcome. The Judge's failure to recognize them warrants the reversal of the order and dismissal of the claims against Cohen as a matter of law.[17]

---

[17] Defendants note that, even after the ample opportunity to do so in response to defendants' Appeal Brief, plaintiffs have failed to identify any legal authority that supports their attenuated claim against Cohen. Plaintiffs have not even put a name to the cause of action they assert against him. In addition, plaintiffs argue that defendants have raised for the first time that the allegations against Cohen "do not satisfy the notice requirements" of Rule 8. Plaintiffs' Brief at 12. In fact, defendants argued extensively below that plaintiffs' allegations against Cohen were wholly deficient to support a cause of action against him. See Brief Below. Plaintiffs argue that "the amended complaints . . . provide ample notice because they plainly inform [Cohen] that . . . he will have to demonstrate that the intelligence information he presented to the other defendants accurately reflected the raw intelligence data gathered by his Division." Plaintiffs' Brief at 13. Assuming that any claim lies against Cohen, plaintiffs have failed to identify any such false information provided by him. See Romer v. Morgenthau, 119 F. Supp. 2d 346, 356 (S.D.N.Y. 2000) (Marrero, J.) (dismissing conspiracy complaint and holding that "[p]resumably, Romer's theory is that, were his complaint to survive the motion to dismiss, he would be able through discovery to develop a record substantiating his general pleadings. This aspiration need not detain the Court; Romer is entitled to proceed only if the facts he seeks to prove would state a legally cognizable claim"). Plaintiffs also appear to argue that, because the defendants submitted Continued…

Finally, plaintiffs argue that they "are surprised that defendants have objected [to the as-applied statutory challenges] because the MacNamara plaintiffs consented to defendants' request for a generous extension of time in which to file their Rule 72 motion on the condition that [defendants] not appeal the amendments to add these claims. . . . Defendants apparently felt no obligation to keep their word." Plaintiffs' Brief at 20. Plaintiffs' suggestion that there was any such agreement is a transparent fabrication – and defendants ask the Court to take note of it. Defendants' letter to the Court seeking that extension was transmitted on Friday, February 1, 2008 (Exh. "R"). Plaintiffs' email to defense counsel, which purports to place the condition on the scope of defendants' appeal, was not transmitted until two days later – Sunday, February 3, 2008 – and does not represent that any such agreement had been reached. (Exh. "S"). Defendants, of course, never agreed to that condition; nor did defendants represent to the Court that they had reached any agreement with the Beldock firm (see Exh. "R").

## CONCLUSION

Defendants respectfully request that the Court issue an order granting the relief sought in defendants' Appeal Brief.

Respectfully submitted,

By: _____
James Mirro (JM 2265)
Raju Sundaran (RS 8011)

---

a single consolidated brief opposing the plaintiffs' amendments, the Magistrate Judge was correct in overlooking that each of the proposed complaints must be analyzed for its legal sufficiency on its own merits. Plaintiffs' Brief at 13 n.14. For this remarkable – and incredible – proposition, plaintiffs cite no authority whatsoever.

15

Appendix of Cases On Appeal Of January 23, 2008 Order

1. MacNamara, *et al.* v. City of New York, *et al.*, 04 CV 9216 (RJS)(JCF).

2. Rechtschaffer v. City of New York, *et al.*, 05 CV 9930 (RJS)(JCF).

3. Portera v. City of New York, *et al.*, 05 CV 9985 (RJS)(JCF).

4. Bunim, *et al.* v. City of New York, *et al.*, 05 CV 1562 (RJS)(JCF).

5. Kalra, *et al.* v. City of New York, *et al.*, 05 CV 1563 (RJS)(JCF).

6. Ryan, *et al.* v. City of New York, *et al.*, 05 CV 1564 (RJS)(JCF).

7. Garbini, *et al.* v. City of New York, *et al.*, 05 CV 1565 (RJS)(JCF).

8. Greenwald, *et al.* v. City of New York, *et al.*, 05 CV 1566 (RJS)(JCF).

9. Pickett, *et al.* v. City of New York, *et al.*, 05 CV 1567 (RJS)(JCF).

10. Tremayne, *et al.* v. City of New York, *et al.*, 05 CV 1568 (RJS)(JCF).

11. Biddle, *et al.* v. City of New York, *et al.*, 05 CV 1570 (RJS)(JCF).

12. Moran, *et al.* v. City of New York, *et al.*, 05 CV 1571 (RJS)(JCF).

13. Botbol, *et al.* v. City of New York, *et al.*, 05 CV 1572 (RJS)(JCF).

14. Crotty, *et al.* v. City of New York, *et al.*, 05 CV 7577 (RJS)(JCF).

15. Stark, *et al.* v. City of New York, *et al.*, 05 CV 7579 (RJS)(JCF).

16. Lalier, *et al.* v. City of New York, *et al.*, 05 CV 7580 (RJS)(JCF).

17. Grosso v. City of New York, *et al.*, 05 CV 5080 (RJS)(JCF).

18. Dudek v. City of New York, *et al.*, 04 CV 10178 (RJS)(JCF).

19. Bell v. City of New York, *et al.*, 05 CV 3705 (RJS)(JCF).

20. Starin v. City of New York, *et al.*, 05 CV 5152 (RJS)(JCF).

21. Lee v. City of New York, *et al.*, 05 CV 5528 (RJS)(JCF).

22. Cohen v. City of New York, *et al.*, 05 CV 6780 (RJS)(JCF).

23. <u>Phillips</u>, *et al.* v. City of New York, *et al.*, 05 CV 7624 (RJS)(JCF).

24. <u>Coburn</u>, *et al.* v. City of New York, *et al.*, 05 CV 7623 (RJS)(JCF).

25. <u>Drescher</u> v. City of New York, *et al.*, 05 CV 7541 (RJS)(JCF).

26. <u>Bastidas</u>, *et al.* v. City of New York, *et al.*, 05 CV 7670 (RJS)(JCF).

27. <u>Xu</u>, *et al.* v. City of New York, *et al.*, 05 CV 7672 (RJS)(JCF).

28. <u>Sloan</u>, *et al.* v. City of New York, *et al.*, 05 CV 7668 (RJS)(JCF).

29. <u>Galitzer</u> v. City of New York, *et al.*, 05 CV 7669 (RJS)(JCF).

30. <u>Sikelianos</u> v. City of New York, *et al.*, 05 CV 7673 (RJS)(JCF).

31. <u>Abdell</u>, *et al.* v. City of New York, *et al.*, 05 CV 8453 (RJS)(JCF).

32. <u>Adams</u>, *et al.* v. City of New York, *et al.*, 05 CV 9484 (RJS)(JCF).

33. <u>Araneda</u>, *et al.* v. City of New York, *et al.*, 05 CV 9738 (RJS)(JCF).

34. <u>Eastwood</u>, *et al.* v. City of New York, *et al.*, 05 CV 9483 (RJS)(JCF).

35. <u>Tikkun</u> v. City of New York, *et al.*, 05 CV 9901 (RJS)(JCF).